IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JUSTIN TYLER LEONARD, | ) |
| Plaintiff, | ) |
| v. | ) |
| NABER SUBWAY, INC., | ) |
|     Serve: Gary Naber, | ) Case No. 7:18CV566 |
|           Registered Agent, | ) |
|           196 Queens Knob | ) |
|           Wytheville, VA 24382 | ) |
| and | ) |
| DOCTOR'S ASSOCIATES, INC. | ) |
| d/b/a SUBWAY IP, INC., | ) |
| d/b/a SUBWAY | ) |
| | ) **JURY TRIAL DEMAND** |
|     Serve: Robert A. Payne, | ) |
|           Registered Agent | ) |
|           11320 Random Hills Rd, | ) |
|           Suite 690 | ) |
|           Fairfax, VA 22030 | ) |
| Defendants. | ) |

**COMPLAINT**

COMES NOW, Plaintiff Justin Tyler Leonard, by counsel, and states as his Complaint against Naber Subway, Inc. ("Naber Subway") and Doctor's Associates, Inc. d/b/a Subway IP, Inc., d/b/a Subway ("DA"), the following:

**I. Jurisdiction and Venue**

1. The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as Mr. Leonard has suffered discrimination and retaliation, in violation of federal law, pursuant to the Genetic Information Nondiscrimination Act of 2008, as

codified under 42 U.S.C. §§ 2000ff, *et seq*. ("GINA") and a failure to accommodate, discrimination, and retaliation, in violation of by the Americans with Disabilities Act, as codified under 42 U.S.C. §§ 12101, *et seq* ("ADA").

2. Mr. Leonard is a resident of Bland County, Virginia.

3. Naber Subway is a corporation incorporated under the laws of the Commonwealth of Virginia and maintains its principal place of business in Wythe County, Virginia.

4. DA is a corporation incorporated under the laws of the State of Connecticut with a principal place of business in the State of Connecticut. DA has extensive business contacts within the Commonwealth of Virginia and derives significant revenue from its operations within Virginia, subjecting it to personal jurisdiction under the Virginia Long Arm Statute, Va. Code Ann. § 8.01-328.1.

5. Venue is proper in this Court as a substantial portion of the acts and/or omissions that gave rise to Mr. Leonard's claims occurred in Bland County, Virginia, which is within the geographic bounds of this District. *See* 28 U.S.C. § 1391(b)(2); Western District of Virginia Local Rule 2(a)(7).

6. Mr. Leonard timely filed a Charge of Discrimination with the EEOC. Upon exhausting his administrative remedies, Mr. Leonard received a Notice of Right to Sue, a true and accurate copy of which is attached hereto as **EXHIBIT A**.

## II. Facts

7. At all times relevant to this Complaint, Mr. Leonard's direct supervisor was Gary Naber, owner of Naber Subway.

8. Mr. Naber is a franchisee of two Subway locations directly from DA, located in Bland and also Wytheville, Virginia.

9. Upon information and belief, at least fifteen (15) employees are employed by Naber Subway within seventy-five (75) miles of the Bland, Virginia Subway location.

10. During his time at Naber and DA, Mr. Leonard performed his job duties competently.

11. At the beginning of his employment, management did not find fault with Mr. Leonard's ability to prepare Subway sandwiches correctly and in a timely manner. Mr. Leonard's immediate supervisor was the scheduled shift leader on that given day. Shortly after Mr. Leonard began working at Naber and DA, his shift leaders would praise Mr. Leonard for quickly learning how to make Subway sandwiches and interact positively with customers.

12. Ultimately, only Mr. Naber held the authority to hire and terminate Mr. Leonard's employment.

13. At all times relevant to this Complaint, Mr. Leonard was under the age of eighteen (18).

14. DA provides significant training and oversight of its franchisees.

15. Upon information and belief, DA sets requirements for its franchisee's businesses, such as participation in charitable acts related to nutrition of lower income individuals and training and oversight requirements of Sandwich Artists, who are those individuals that actually create sandwiches and serve customers, and other supervisory employees.

16. Further, DA requires that franchisees purchase food products, restaurant equipment, and marketing material exclusively from DA. Such food products are the items in which Naber Subway and DA gain a significant portion of their revenue.

## Mr. Leonard Suffers From A Disability

17. Mr. Leonard constantly received praise and regularly worked a significant number of hours per week.

18. Mr. Leonard was diagnosed with mild Cerebral Palsy ("CP") at age 13, but likely had the condition since birth.

19. CP is a brain injury or malformation that occurs prior to or at birth. CP is a chronic, permanent condition that affects major life activities, such as walking, talking, or thinking, due to loss of body movement control, muscle control, muscle coordination, muscle tone, reflex, posture and balance.

20. CP can also impact fine motor skills, gross motor skills and oral motor functioning.

21. There is also a known genetic component that increases the risk that an individual will be born with CP. Stress greatly increases the symptoms of CP. This health issue is a recognized disability under the Americans with Disabilities Act ("ADA").

22. Mr. Leonard was able to perform his employment functions with few accommodations.

23. Alternatively, Mr. Leonard was regarded as disabled by Mr. Naber, Naber Subway, and DA.

## Mr. Leonard Suffers ADA and GINA Retaliation For Opposing Discrimination And Retaliation Taken Against Mr. Leonard

24. On or about January 30, 2017, Mr. Naber was visiting the Bland, Virginia Subway location where Mr. Leonard worked.

25. Bland County, in which the town of Bland is located, has a total population of approximately 7,000 people.

26. On or about that day, Mr. Naber had become aware that Mr. Leonard had mild CP. Mr. Naber, without warning, summoned Mr. Leonard into the dining room of the Bland Subway restaurant from behind the sandwich station.

27. In front of customers, Mr. Naber loudly exclaimed, "[Tyler], I hear you have [CP]."

28. In Bland, because it is such a small community, Mr. Leonard's disability became widely known at that time, when it previously was not known or widely known in the community.

29. After this incident with Mr. Naber, Mr. Leonard began to receive unwarranted verbal and written warnings about his job performance.

30. Upon information and belief, Mr. Naber directed supervisory employees to target Mr. Leonard due solely to Mr. Leonard's disability.

31. Upon information and belief, Mr. Leonard's disability, once known, made him a target for discrimination because he was "different," due to living in a small community.

32. On or about February 1, 2017, Mr. Leonard's shift leader accused Mr. Leonard of incorrectly preparing the bread used in the restaurant.

33. Mr. Leonard had not received this accusation before the incident with Mr. Naber on or about January 30. Mr. Leonard showed the shift leader that, in fact, the bread had been made according to DA guidelines.

34. Regardless, Mr. Leonard received an undeserved verbal warning for this incident.

35. On or about February 5, 2017, a customer asked for a different type of sandwich after the customer placed his or her order.

36. The shift leader accused Mr. Leonard of not "fixing the sandwich right" and sent Mr. Leonard home before the end of his scheduled shift. The shift leader's decision to send Mr. Leonard home early for allegedly making one incorrect sandwich was a far more severe punishment than Sandwich Artists would ordinarily receive.

37. Finally, on or about February 11, 2017, the Bland Subway restaurant was particularly busy.

38. Mr. Leonard prepared sandwiches within an acceptable amount of time. Mr. Leonard, due to his disability, is not always able to make sandwiches as quickly as others, particularly in stressful situations.

39. However, the time Mr. Leonard took to prepare sandwiches that day did not significantly impair the operation of the restaurant. The shift leader accused Mr. Leonard of "not doing his job fast enough."

40. As a result, Mr. Leonard received an undeserved written warning. Mr. Leonard was also told that he would have to take a test and receive a perfect score on the test to continue to work at the Bland Subway restaurant.

41. Mr. Leonard did not receive a perfect score. Upon information and belief, no other Bland Subway employees had to take such a test nor receive such a score.

42. On or around February 10, 2017, after suffering indignities and unfounded disciplinary actions by his supervisors, Mr. Leonard was constructively discharged from his employment at Naber and DA.

43. Mr. Leonard submitted a two-week notice resignation but was terminated immediately after submitting his notice.

44. Mr. Naber, before and after Mr. Leonard's constructive discharge on or around February 10, 2017, spoke of Mr. Leonard's disability with other area business

employees and expressed his displeasure of hiring Mr. Leonard due to the "potential liability" resulting from his Cerebral Palsy.

45. This retaliation has made it difficult for Mr. Leonard to find gainful, full-time employment after his resignation.

46. Instead, Mr. Leonard has only been able to secure "odd jobs" as a means of support.

47. Naber Subway is responsible for the actions of Gary Naber, Mr. Leonard's shift leaders, and others against Mr. Leonard based on the doctrine of *respondeat superior* because these actions were taken within the scope of employment.

48. The short temporal proximity between the time Mr. Naber knew or regarded Mr. Leonard as having a disability and his constructive discharge from employment supports Mr. Leonard's claims for discrimination and retaliation.

49. As a direct and proximate result of Naber Subway's actions, Mr. Leonard has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary loss.

### III. Claims

#### Count I: Discrimination and Retaliation in Violation of
#### The Americans with Disabilities Act

50. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

51. Plaintiff is a qualified individual with a disability, to-wit, mild Cerebral Palsy. Plaintiff was diagnosed with this disability at age 13, but likely had it since at or before birth.

52. CP is a brain injury or malformation that occurs prior to or at birth. CP is a chronic, permanent condition that affects major life activities, such as walking, talking, or thinking, due to loss of body movement control, muscle control, muscle coordination, muscle tone, reflex, posture and balance.

53. CP can also impact fine motor skills, gross motor skills and oral motor functioning.

54. Plaintiff was able to perform the essential functions of his job with or without accommodation.

55. On or about January 30, 2017, Mr. Naber was visiting the Bland, Virginia Subway location where Mr. Leonard worked.

56. On or about that day, Mr. Naber had become aware that Mr. Leonard had mild CP. Mr. Naber, without warning, summoned Mr. Leonard into the dining room of the Bland Subway restaurant from behind the sandwich station.

57. In front of customers, Mr. Naber loudly exclaimed, "[Tyler], I hear you have [CP]."

58. Due to Mr. Naber perceiving Mr. Leonard's CP as a disability, Mr. Naber had an affirmative duty to inquiry whether Mr. Leonard needed reasonable accommodations.

59. Mr. Naber, nor other supervisory employees at Naber Subway or DA, inquired whether Mr. Leonard needed accommodation(s) and did not engage in the interactive process to determine the need for accommodation(s).

60. Upon information and belief, Mr. Naber possessed the requisite supervisory authority over Mr. Leonard, in that Mr. Naber could hire or terminate Mr. Leonard's employment. In addition, shift leaders and supervisor employees were able to discipline

Mr. Leonard and recommend his termination, with such recommendations being typically followed by Mr. Naber.

61. In the alternative, Mr. Naber regarded Mr. Leonard as being disabled.

62. After this incident with Mr. Naber, Mr. Leonard began to receive unwarranted verbal and written warnings about his job performance.

63. Upon information and belief, Mr. Naber directed supervisory employees to target Mr. Leonard due solely to Mr. Leonard's disability.

64. Mr. Leonard was accused of improperly preparing bread by his shift leader.

65. Mr. Leonard then received an undeserved verbal warning for this incident.

66. Further, on February 1, 2018, the shift leader accused Mr. Leonard of not "fixing the sandwich right" and sent Mr. Leonard home before the end of his scheduled shift. The shift leader's decision to send Mr. Leonard home early for allegedly making one incorrect sandwich was a far more severe punishment than Sandwich Artists would ordinarily receive.

67. Finally, on or about February 11, 2017, despite the Bland Subway being particularly busy, Mr. Leonard prepared sandwiches within an acceptable amount of time. Mr. Leonard, due to his disability, is not always able to make sandwiches as quickly as others, particularly in stressful situations.

68. However, the time Mr. Leonard took to prepare sandwiches that day did not significantly impair the operation of the restaurant. The shift leader accused Mr. Leonard of "not doing his job fast enough."

69. As a result, Mr. Leonard received an undeserved written warning. Mr. Leonard was also told that he would have to take a test and receive a perfect score on the test to continue to work at the Bland Subway restaurant.

70. On or about February 12, 2017, Mr. Leonard took the test but was immediately accused of "cheating" by a supervisory employee.

71. Upon information and belief, no other Bland Subway employees had to take such a test nor receive such a score.

72. On or around February 12, 2017, after suffering indignities and unfounded disciplinary actions by his supervisors, Mr. Leonard was constructively discharged from his employment at Naber and DA.

73. Mr. Leonard submitted a two-week notice resignation but was terminated immediately after submitting his notice.

74. Mr. Naber, before and after Mr. Leonard's constructive discharge on or around February 12, 2017, spoke of Mr. Leonard's disability with other area business employees and expressed his displeasure of hiring Mr. Leonard due to the "potential liability" resulting from his Cerebral Palsy.

75. This retaliation has made it difficult for Mr. Leonard to find gainful, full-time employment after his resignation.

76. Instead, Mr. Leonard has only been able to secure "odd jobs" as a means of support.

77. Naber Subway and DA would not have created an objectively intolerable working environment, prompting Mr. Leonard's constructive discharge, nor taken other discriminatory and retaliatory actions against him but for his disability and/or need for reasonable accommodations.

78. Indeed, Mr. Leonard's constructive discharge from employment occurred under circumstances that raise a reasonable inference of unlawful discrimination and retaliation based upon his disability and/or requests for accommodations.

79. Naber Subway and DA's working conditions that precipitated Mr. Leonard's constructive discharge were pretextual and directly related to Naber Subway and DA's intent to discriminate and retaliate against Mr. Leonard due to his disability and/or need for reasonable accommodations.

80. As a direct and proximate result of Naber Subway and DA's actions, Mr. Leonard has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary loss.

81. At all times material hereto, Naber Subway and DA engaged in unlawful or discriminatory practices with malice or reckless indifference to the federally protected rights of Mr. Leonard so as to support an award of punitive damages.

82. The above-described acts by Naber Subway and DA and employees of Naber Subway and DA constitute disability discrimination and retaliation in violation of the ADA.

### Count II: Failure to Accommodate in Violation of the Americans with Disabilities Act

83. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

84. Plaintiff is a qualified individual with a disability, to-wit, mild Cerebral Palsy. Plaintiff was diagnosed with this disability at age 13, but like had it since at or before birth.

85. CP is a brain injury or malformation that occurs prior to or at birth. CP is a chronic, permanent condition that affects major life activities, such as walking, talking, or thinking, due to loss of body movement control, muscle control, muscle coordination, muscle tone, reflex, posture and balance.

86. CP can also impact fine motor skills, gross motor skills and oral motor functioning.

87. The impacts of CP, as detailed in Paragraphs 83 and 84 of the Complaint, are exacerbated, and further complicated, by undue stress.

88. Plaintiff was able to perform the essential functions of his job with or without accommodation.

89. On or about January 30, 2017, Mr. Naber was visiting the Bland, Virginia Subway location where Mr. Leonard worked.

90. On or about that day, Mr. Naber had become aware that Mr. Leonard had mild CP. Mr. Naber, without warning, summoned Mr. Leonard into the dining room of the Bland Subway restaurant from behind the sandwich station.

91. In front of customers, Mr. Naber loudly exclaimed, "[Tyler], I hear you have [CP]."

92. Upon information and belief, Mr. Naber possessed the requisite supervisory authority over Mr. Leonard, in that Mr. Naber could hire or terminate Mr. Leonard's employment. In addition, shift leaders and supervisor employees were able to discipline Mr. Leonard and recommend his termination, with such recommendations being typically followed by Mr. Naber.

93. In the alternative, Mr. Naber regarded Mr. Leonard as being disabled.

94. On or about February 1, 2017, Mr. Leonard's shift leader accused Mr. Leonard of incorrectly preparing the bread used in the restaurant.

95. Mr. Leonard had not received this accusation before the incident with Mr. Naber on or about January 30. Mr. Leonard showed the shift leader that, in fact, the bread had been made according to DA guidelines.

96. On or about February 5, 2017, a customer asked for a different type of sandwich after the customer placed his or her order.

97. The shift leader accused Mr. Leonard of not "fixing the sandwich right" and sent Mr. Leonard home before the end of his scheduled shift. The shift leader's decision to send Mr. Leonard home early for allegedly making one incorrect sandwich was a far more severe punishment than Sandwich Artists would ordinarily receive.

98. Finally, on or about February 11, 2017, the Bland Subway restaurant was particularly busy.

99. Mr. Leonard prepared sandwiches within an acceptable amount of time. Mr. Leonard, due to his disability, is not always able to make sandwiches as quickly as others, particularly in stressful situations.

100. However, the time Mr. Leonard took to prepare sandwiches that day did not significantly impair the operation of the restaurant. The shift leader accused Mr. Leonard of "not doing his job fast enough."

101. The incidents of February 1, 5, and 11, 2017, had Mr. Naber and other supervisory employees believed Mr. Leonard's "work performance issues" been related to his disability, Mr. Naber and others had an affirmative duty to engage in the interactive process with Mr. Leonard.

102. Due to Mr. Naber perceiving Mr. Leonard's CP as a disability, Mr. Naber had an affirmative duty to inquiry whether Mr. Leonard needed reasonable accommodations.

103. Mr. Naber, nor other supervisory employee at Naber Subway or DA, inquired whether Mr. Leonard needed accommodation(s) and did not engage in the interactive process to determine the need for accommodation(s).

104. On or around February 10, 2017, after suffering indignities and unfounded disciplinary actions by his supervisors, Mr. Leonard was constructively discharged from his employment at Naber and DA.

105. Mr. Leonard submitted a two-week notice resignation but was terminated immediately after submitting his notice.

106. Naber Subway and DA would not have created an objectively intolerable working environment, prompting Mr. Leonard's constructive discharge, nor taken other discriminatory and retaliatory actions against him but for his disability and/or need for reasonable accommodations.

107. Indeed, Mr. Leonard's constructive discharge from employment occurred under circumstances that raise a reasonable inference of unlawful discrimination and retaliation based upon his disability and/or requests for accommodations.

108. Naber Subway and DA's working conditions that precipitated Mr. Leonard's constructive discharge were pretextual and directly related to Naber Subway and DA's intent to discriminate and retaliate against Mr. Leonard due to his disability and/or need for reasonable accommodations.

109. As a direct and proximate result of Naber Subway and DA's actions, Mr. Leonard has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary loss.

110. At all times material hereto, Naber Subway and DA engaged in unlawful or discriminatory practices with malice or reckless indifference to the federally protected rights of Mr. Leonard so as to support an award of punitive damages.

111. The above-described acts by Naber Subway and DA and employees of Naber Subway and DA constitute disability discrimination and retaliation in violation of the ADA.

### Count III: Discrimination and Retaliation in Violation of Genetic Information Nondiscrimination Act of 2008

112. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

113. Plaintiff is a qualified individual with a disability, to-wit, mild Cerebral Palsy. Plaintiff was diagnosed with this disability at age 13, but like had it since at or before birth.

114. CP is a brain injury or malformation that occurs prior to or at birth. CP is a chronic, permanent condition that affects major life activities, such as walking, talking, or thinking, due to loss of body movement control, muscle control, muscle coordination, muscle tone, reflex, posture and balance.

115. CP can also impact fine motor skills, gross motor skills and oral motor functioning.

116. CP is known to have, at least in part, a genetic origin.

117. CP is a disease or disorder to manifest from a genetic origin, such that individuals with CP are protected from discrimination and retaliation under GINA.

118. On or about January 30, 2017, Mr. Naber was visiting the Bland, Virginia Subway location where Mr. Leonard worked.

119. On or about that day, Mr. Naber had become aware that Mr. Leonard had mild CP. Mr. Naber, without warning, summoned Mr. Leonard into the dining room of the Bland Subway restaurant from behind the sandwich station.

120. In front of customers, Mr. Naber loudly exclaimed, "[Tyler], I hear you have [CP]."

121. Mr. Naber, and other supervisory employees, discriminated and retaliated against Mr. Leonard due to his CP.

122. Mr. Leonard received various verbal and written reprimands for allegedly incorrectly preparing bread and building sandwiches for customers.

123. Such verbal and written reprimands were pretextual, as Mr. Leonard performed his job duties to the legitimate business expectations of Naber Subway and DA.

124. Mr. Leonard was also required to take a test and receive a perfect score that no other employee without a genetically-based disease or disorder was required to take.

125. On or around February 10, 2017, after suffering indignities and unfounded disciplinary actions by his supervisors, Mr. Leonard was constructively discharged from his employment at Naber and DA.

126. Mr. Leonard submitted a two-week notice resignation but was terminated immediately after submitting his notice.

127. Naber Subway and DA would not have created an objectively intolerable working environment, prompting Mr. Leonard's constructive discharge, nor taken other discriminatory and retaliatory actions against him but for his disability and/or need for reasonable accommodations.

128. Indeed, Mr. Leonard's constructive discharge from employment occurred under circumstances that raise a reasonable inference of unlawful discrimination and retaliation based upon his disability and/or requests for accommodations.

129. Naber Subway and DA's working conditions that precipitated Mr. Leonard's constructive discharge were pretextual and directly related to Naber Subway

and DA's intent to discriminate and retaliate against Mr. Leonard due to his disability and/or need for reasonable accommodations.

130. As a direct and proximate result of Naber Subway and DA's actions, Mr. Leonard has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary loss.

131. At all times material hereto, Naber Subway and DA engaged in unlawful or discriminatory practices with malice or reckless indifference to the federally protected rights of Mr. Leonard so as to support an award of punitive damages.

132. The above-described acts by Naber Subway and DA and employees of Naber Subway and DA constitute disability discrimination and retaliation in violation of GINA.

WHEREFORE, Plaintiff Justin Tyler Leonard prays for judgement against Defendants Naber Subway, Inc. and Doctor's Associates, Inc. d/b/a Subway IP, Inc., d/b/a Subway and for equitable relief, compensatory, punitive damages, together with prejudgment interest from the date of termination of Mr. Leonard's employment, and for costs and attorneys' fees, and for such other and further relief as may be just and equitable.

TRIAL BY JURY IS DEMANDED.

Respectfully submitted,

/s/ Thomas E. Strelka
Thomas E. Strelka, Esq. (VSB# 75488)
L. Leigh R. Strelka, Esq. (VSB # 73355)
N. Winston West, IV, Esq. (VSB # 92598)

STRELKA LAW OFFICE, PC
Warehouse Row
119 Norfolk Avenue, S.W., Suite 330
Roanoke, VA 24011
Tel: 540-283-0802
thomas@strelkalaw.com
leigh@strelkalaw.com
winston@strelkalaw.com

*Counsel for Plaintiff*